*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 14, 2019

Plaintiff-Appellee,

v

No. 337134
Wayne Circuit Court
LC No. 16-008567-01-FC

CHRISTOBAL MAURICIO DELEON,

Defendant-Appellant.

Before: CAMERON, P.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

A jury convicted defendant of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, and one count of kidnapping, MCL 750.349. The trial court sentenced defendant to 65 to 80 years' imprisonment for each CSC-I conviction to be served concurrent to 50 to 80 years' imprisonment for the kidnapping conviction. We affirm defendant's convictions, but we vacate defendant's sentences and remand for resentencing before a different judge.

In 2003, defendant kidnapped and sexually assaulted the female victim. In August of that year, the victim was outside her Detroit home talking to a homeless man whom she sometimes assisted. A van drove by twice before stopping near the victim. A man jumped out of the van, punched the homeless man, and then grabbed the victim by her hair, placed a knife to her neck, and with the help of a second man, pulled her into the van. Once inside the van, a towel was placed over the victim's head, but she was able to see that there were four men inside the van. The victim described being repeatedly sexually and physically assaulted over a period of several hours while inside the moving van. The victim heard the men speak in Spanish, which she understood, about whether they should kill her or just leave her somewhere. The van apparently ran out of gas and one of the men pushed the victim out of the van in a neighborhood where other people were nearby. Witnesses observed some of the male assailants chasing the partially-clad victim as she ran away from the van, but the men gave up their chase when they saw the nearby witnesses. Other people assisted the victim and contacted the police. The abandoned van was discovered nearby. Various articles of the victim's clothing were found inside the van. The victim was taken to a hospital where evidence was collected for a sexual assault kit.

The investigation languished for several years until the sexual assault kit was eventually sent for forensic testing. When the kit was tested, the test results revealed a match with defendant's DNA profile. In 2016, the victim was shown a photographic array and, although she identified defendant's photograph as someone she recognized, she could not remember from where or the circumstances under which she recognized him.

During trial, the prosecutor introduced evidence that the van used during the crime was stolen in a carjacking offense that was committed shortly before the victim was abducted from the street. A police officer testified regarding the contents of the carjacking police report. The carjacking victim reported that Hispanic males, one of whom was armed with a knife, had carjacked his van in the same general area where the victim of this offense was abducted. The carjacking victim did not testify at trial.

## I. ADMISSION OF CARJACKING VICTIM'S POLICE REPORT

On appeal, defendant argues that reversal is required because the carjacking victim's statement in a police report was inadmissible hearsay and its admission violated his constitutional right of confrontation. Because defendant did not object to this evidence at trial, this issue is unpreserved. MRE 103(a)(1); *People v Knox*, 469 Mich 502, 508; 674 NW2d 366 (2004). An unpreserved claim of evidentiary error, both constitutional and nonconstitutional, is reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *People v Jones*, 468 Mich 345, 355-356; 662 NW2d 376 (2003).

Defendant alternatively argues that defense counsel was ineffective for failing to object to the challenged testimony. This Court recognizes that defendant filed a motion for remand; however, in his motion defendant requested a remand only for resentencing. Because defendant did not request a *Ginther*[1] hearing regarding the ineffective assistance of counsel or otherwise preserve this claim, our review is limited to errors apparent from the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he was denied his right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). To establish prejudice, defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v Johnnie Johnson, Jr*, 451 Mich 115, 124; 545 NW2d 637 (1996).

We first consider defendant's argument that the statements in the carjacking victim's police report were inadmissible hearsay. Hearsay is a statement, other than one made by the declarant while testifying at trial, offered to prove the truth of the matter asserted. MRE 801(c); *People v Dendel (On Second Remand)*, 289 Mich App 445, 452; 797 NW2d 645 (2010). Hearsay is generally inadmissible unless it falls within an exception to the hearsay rule. *Dendel*,

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

289 Mich App at 452. The improper admission of hearsay evidence may also implicate the defendant's rights under the Confrontation Clause. *Id*. at 452-453.

We agree that the police officer's testimony regarding the carjacking victim's police report of that crime was hearsay, because the carjacking victim's account was an out-of-court statement and the record discloses that this evidence was used to prove the truth of the matters asserted therein. Although statements offered to show why the police took certain action are not hearsay, *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007), that was not the purpose of the officer's testimony regarding the carjacking victim's police report. Indeed, the prosecutor argued during closing argument that the carjacking victim's description of the perpetrators of the carjacking matched the instant victim's description of the men who kidnapped and assaulted her. Further, there is no apparent exception to the hearsay rule for admitting this evidence. Although MRE 801(d)(1) provides that a statement of identification of a person made after perceiving the person is not hearsay, that rule applies only where the declarant "testifies at the trial or hearing and is subject to cross-examination concerning the statement." The carjacking victim did not testify at defendant's trial. Accordingly, defendant has demonstrated that the carjacking victim's police report was inadmissible hearsay.

Defendant has also shown that the admission of the carjacking victim's statements from the police report violated his rights under the Confrontation Clause. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." US Const, Am VI; see also Const 1963, art 1, § 20. The Confrontation Clause bars the use of a witness's testimonial statements if the witness is unavailable for trial, unless the defendant had a prior opportunity to cross-examine the witness. *Crawford v Washington*, 541 US 36, 59; 124 S Ct 1354; 158 L Ed 2d 177 (2004). The carjacking victim's police report qualifies as testimonial because he was reporting a crime pursuant to a police investigation. See *Dendel*, 289 Mich App at 453-454. The carjacking victim did not testify at trial, and defendant did not have a prior opportunity to cross-examine him at trial or a previous hearing.

We conclude, however, that the erroneous admission of the carjacking victim's police report did not affect defendant's substantial rights. The admission of evidence in violation of the Confrontation Clause may be harmless error. *People v Shepherd*, 472 Mich 343, 347; 697 NW2d 144 (2005). In *Shepherd*, in the context of addressing a preserved claim of constitutional error, our Supreme Court observed that "[a] constitutional error is harmless if '[it is] clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *Id*. The Court explained that "to safeguard the jury trial guarantee, a reviewing court must 'conduct a thorough examination of the record' in order to evaluate whether it is clear, beyond a reasonable doubt, that the jury verdict would have been the same absent the error." *Id*. at 348 (citation omitted).

In this case, the carjacking victim's police report was probative of whether the persons who were involved in the carjacking were the same persons involved in the offenses committed against the sexual assault victim, but the report sheds no light on defendant's identity as one of those persons. However, an examination of the entire body of evidence reveals that there was no material issue concerning whether the instant victim was forcibly abducted from the street and sexually assaulted against her will. These circumstances were supported not only by the victim's

testimony, but also by the evidence of her physical injuries, the testimony from witnesses who observed the partially-clad victim running from the van while being chased by multiple men, the discovery of assorted articles of the victim's clothing inside the abandoned van, and the discovery of male DNA on vaginal swabs collected from the victim after she was taken to the hospital. The jury was not presented with any evidence suggesting that the victim's presence with the group of men inside the van was voluntary, or that any sexual activity was consensual. The main issue at trial was whether defendant could be identified as one of the men who abducted and sexually assaulted the victim. As indicated, the carjacking victim's police report was not probative of that issue. Rather, defendant's identity was established by the DNA evidence, which showed that DNA on a vaginal swab collected from the victim on the day of the offense matched defendant's DNA profile. In light of this evidence, the officer's testimony about the earlier carjacking victim's police report did not affect defendant's substantial rights because it did not affect the outcome of defendant's trial. Indeed, even though the error was not preserved, considering the entire record and the fact that the erroneously admitted evidence was not probative of the principal issue at trial, we conclude that the error is harmless beyond a reasonable doubt.

Furthermore, defendant is not entitled to relief under his alternative claim of ineffective assistance of counsel. Even if it was objectively unreasonable for defense counsel to fail to object to the carjacking victim's police report, for the reasons discussed above, there is no reasonable probability that counsel's failure to object affected the outcome of defendant's trial. Accordingly, defendant cannot establish the requisite prejudice to succeed on a claim of ineffective assistance of counsel.

## II. SENTENCING

Defendant next argues that multiple sentencing errors entitle him to be resentenced. We agree that defendant is entitled to resentencing.

During plea negotiations before trial, the prosecution offered a sentence agreement of 20 to 30 years' imprisonment if defendant pleaded guilty to the offenses as charged. The trial court, pursuant to a *Cobbs*[2] evaluation, expressed its willingness to consider a minimum sentence as low as nine years. Defendant rejected these offers and elected to proceed to trial, where the jury convicted him as charged. At sentencing, after making corrections to the scoring of the sentencing guidelines, the parties and the trial court agreed that the guidelines minimum sentence range was 135 to 225 months' imprisonment, i.e., 11 years and three months to 18 years and 9 months' imprisonment. The prosecutor asked the trial court to depart from this range and impose a minimum sentence of 20 years. The trial court instead sentenced defendant to 65 to 80 years' imprisonment for each CSC-I conviction and 50 to 80 years' imprisonment for the kidnapping conviction.

We first consider whether resentencing is warranted because the trial court misunderstood the extent to which it was departing from the applicable guidelines range. It is

---

[2] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

undisputed that defendant's guidelines minimum sentence range was 135 to 225 months' imprisonment. When imposing sentence, however, the trial court stated, "So it will be the sentence of this Court that for criminal sexual conduct in the first degree you will serve a minimum of 65 years in the Michigan Department of Corrections, which I recognize is well above the 35 years which is the top of your guidelines . . . ." A defendant is entitled to be sentenced on the basis of accurate information, and with consideration of the correct guidelines range. See *People v Steanhouse*, 500 Mich 453, 474-475; 902 NW2d 327 (2017) ("We repeat our directive from [*People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015)] that the guidelines remain a highly relevant consideration in a trial court's exercise of sentencing discretion that trial courts must consult and take . . . into account when sentencing[.]") (citation and quotation marks omitted); see also *People v Francisco*, 474 Mich 82, 90, n 9; 711 NW2d 44 (2006). Although the trial court had earlier recognized that the ceiling of defendant's guidelines minimum sentence range was 225 months, i.e., 18 years and 9 months, its statement that it believed the top of the guidelines minimum sentence range was 35 years indicates that it was confused or misunderstood the proper guidelines range. It is unclear to what extent this misunderstanding may have influenced the trial court's sentencing decision or the degree of the departure. Regardless, the trial court's statement indicates that it inaccurately believed that the ceiling of the guidelines minimum sentence range was almost double the actual ceiling. Because defendant is entitled to be sentenced on the basis of accurate information, this error warrants resentencing.

Although we have concluded that defendant is entitled to resentencing, we will address defendant's other claims of sentencing error, which are relevant to defendant's additional request that he be resentenced by a different judge.

Defendant, who is originally from El Salvador, argues that he is entitled to be resentenced because the trial court's departure from the guidelines was based in part on his race, ethnicity, alienage, and national origin. In support of this argument, defendant relies on the following remarks by the trial court at sentencing:

> You, sir, are a discredit to every immigrant who comes to this country seeking a better life for themselves and their family. You, sir, are fodder for the people who believe that a wall should be built to keep Mexicans out of this country, to keep Hispanics out of this country. It's people like you and your friends who did what they did to this woman is the reason right now we have a president and a whole bunch of people following him believing a wall should be built to keep Latinos out of this country.

MCL 769.34(3)(a) limits a trial court's discretion to depart from the applicable guidelines range and provides that "[t]he court shall not use an individual's . . . race, ethnicity, alienage, national origin, . . . to depart from the appropriate sentence range."

The trial court's comments about defendant's Hispanic heritage are troubling. Indeed, we agree with the prosecutor's acknowledgement on appeal that the trial judge's comments were "inflammatory," "unnecessary," and "inappropriate." However, defendant further asserts that these same comments *necessarily* reflect the trial court's racial animus towards defendant and the improper use of defendant's "race, ethnicity, alienage, [or] national origin" to depart from the

guidelines range.[3] We disagree. As the prosecution contends, the trial court's comments can just as easily be read to reflect the trial court's opinion that other people, including politicians, have used brutal crimes like those committed by defendant for political purposes. In other words, these comments, which are part of a much longer and appropriate rationale for defendant's sentence, do not necessarily reveal that "race, ethnicity, alienage, [or] national origin" was used to impose sentence.

These comments are readily distinguishable from the trial court's improper comments at sentencing in *People v Gjidoda*, 140 Mich App 294, 301; 364 NW2d 698 (1985). In *Gjidoda*, we concluded that the trial court "considered [the] defendant's ethnic background as a factor in imposing the sentences." *Id*. The trial court had commented:

> I am sending a message by this sentence to a small segment of the Albanian community that they now live in the United States and they are governed by our laws, and we are not going to tolerate whatever the customs may be in Albania, and that includes the customs of dealing with family members as well as the use of guns. [*Id*. at 300.]

Unlike the comments in this case, the trial court in *Gjidoda* expressly stated its intent to use the defendant's ethnic background as part of the sentence. In this case, the trial court's comments, albeit inappropriate, do not reveal that the trial court's intent was to use defendant's race or ethnicity as a factor in the sentencing.

We also reject defendant's contention that the degree of the upward departure from the guidelines supports a racial animus towards defendant. Without question, defendant was convicted of a shocking and horrific crime. Defendant abducted the victim, placed a bag over her head, sexually and physically assaulted her for hours with his friends, contemplated whether to kill her, and then eventually dumped her alone and half-naked in the street. If there was ever a case meriting an upward departure, this was surely that case. The record does not support defendant's argument that the challenged comments by the trial court was a rationale for the basis of the departure sentence. For that reason, we do not conclude that the trial court violated MCL 769.34(3)(a).

Next, defendant argues that the trial court's significant departure sentences were imposed as a penalty for his decision to exercise his right to trial. Defendant relies on the following comments by the trial court at sentencing in support of his argument:

> [T]o suggest that you can have an opportunity to increase your education, you had plenty of time to get an education, you had plenty of time to get an education if that's what you wanted and, you know, the very fact that subsequent to this offense, you didn't do anything too terrible was probably in your best interest

---

[3] We acknowledge that using race, ethnicity, alienage, gender, or national origin for any aspect of sentencing is improper—not just when imposing a departure sentence.

because you were trying to avoid detection for what you had done to this woman who you thought no one would care about. You thought no one would catch you.

> Before this trial when we talked about the offer that the prosecutor made to you and I even gave a COBBS evaluation which was lower than what the prosecutor gave, you kept saying there was no fingerprints, that they didn't have any fingerprints that could link you to the crime and I tried to talk to you about your sperm and your DNA and what [sic] meant and how that was stronger than fingerprints and there's no shame in maintaining your innocence and going to trial. If you did not commit a crime you should not plead guilty and I would never hold it against someone who exercise [sic] their right to a trial. You have a right to a trial but the jury has spoken and the jury has convicted you of all of these charges, so to suggest that you're entitled to something any where [sic] near a minimum sentence when what you have done is one of the most serious and heinous crimes that could ever be perpetrated in a free society.

Defendant fails to provide context for the trial court's comments. The reference to the *Cobbs* evaluation was related in part to defense counsel's request for a lighter sentence due to defendant's history of only non-violent crimes and defendant's desire to continue his education—not for choosing to go to trial. Moreover, reference to the *Cobbs* evaluation was based on defendant's claim of innocence at the time of sentencing. The trial court highlighted the fact that the DNA evidence, known at the time of the *Cobbs* evaluation, strongly implicated defendant. The record does not support that the trial court's comments were in response to defendant's decision to go to trial.

We acknowledge that defendant was sentenced by the same judge whom this Court has admonished twice before for sentencing defendants pursuant to a blanket policy of imposing higher sentences on defendants who decline to plead guilty and exercise their right to a trial. See *People v Pennington*, 323 Mich App 452,468-469; 917 NW2d 720 (2018) (stating that "the judge's sentencing policy was to impose the maximum recommended guidelines sentence when a defendant was convicted after going to trial," which "is a violation of both due process and our law governing sentencing"); see also *People v Smith*, unpublished per curiam opinion of the Court of Appeals, issued November 22, 2016 (Docket No. 328477), p 6 (holding that the judge's policy punished the defendant for exercising his Fifth Amendment rights). Defendant was sentenced in February 2017, after this Court decided *Smith*. However, in this case the trial court did not state or imply that defendant's desire to proceed to trial was the reason for the upward departure. In fact, the trial court made it clear that "there's no shame in maintaining your innocence and going to trial" and that the court "would never hold it against someone who exercise[s] their right to a trial." There is no indication that the trial court was continuing its practice of sentencing at the top of the guidelines. Rather, the trial court spent considerable time explaining that the upward departure from the guidelines range was due to the horrendous nature of the crime, which the trial court described as the kind that "every woman fears" and is "the most serious and heinous crimes that could ever be perpetrated in a free society." The trial court's decision to exceed the guidelines range was based on the nature of the crime itself, not because defendant chose to go to trial.

Defendant also argues that the trial court violated his right to allocution at sentencing. The record does not support this argument. MCR 6.425(E)(1)(c) provides that at sentencing, the trial court "must, on the record . . . give the defendant . . . an opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence." Failure to follow this rule requires resentencing. *People v Kammeraad*, 307 Mich App 98, 149; 858 NW2d 490 (2014). The record discloses that the trial court afforded defendant an opportunity to address the court before sentencing, during which defendant responded to various inquiries by the court. The trial court then asked defendant: "Is there anything else you'd like to say, sir?" Defendant responded, "No." Defendant bases his argument on the trial court's response when defendant attempted to interrupt the trial court's imposition of sentence. The trial court would not allow defendant to speak at this juncture, stating: "I'm done hearing from you. It's my turn to speak now." However, because defendant was given the opportunity to allocute before the court began to impose sentence, his right of allocution was not violated.

Finally, defendant argues that he should be resentenced before a different judge. We consider the following factors in determining whether a resentencing should be conducted by a different judge:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*People v Evans*, 156 Mich App 68, 72; 401 NW2d 312 (1986), quoting *United States v Sears, Roebuck & Co, Inc*, 785 F2d 777, 780 (CA 9, 1986).]

Because the prosecution expressed no objection to resentencing before a new judge, and in light of the comments made at sentencing, we are persuaded that resentencing before a new judge is merited to preserve the appearance of judicial impartiality. Accordingly, we remand for resentencing before another judge.

We affirm defendant's convictions, but we vacate his sentences, and we remand for resentencing by another judge. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Jonathan Tukel