*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BENONI JONATHAN ENCISO,

Defendant-Appellant.

UNPUBLISHED
October 8, 2020

No. 342965
Emmet Circuit Court
LC No. 17-004527-FH

Before: BOONSTRA, P.J., and TUKEL and LETICA, JJ.

PER CURIAM.

Defendant pleaded guilty to four counts of capturing or distributing images of an unclothed person, MCL 750.539j(2)(b), and four counts of use of computers to commit a crime, MCL 752.796; MCL 752.797(3)(d). Defendant was sentenced to serve four concurrent sentences of two to five years' imprisonment for the four convictions of capturing images of an unclothed person, all to be served consecutively to the four concurrent sentences of four and one-half to seven years' imprisonment for the four convictions of use of computers to commit a crime. Defendant appeals as on leave granted by remand order of the Michigan Supreme Court.[1] We affirm.

## I. FACTUAL BACKGROUND

Defendant was employed as an administrator and youth pastor at a church, where he earned the trust of several young women and their families. Defendant used his iPhone to secretly record three sisters, ages 12, 14, and 16, as they showered and changed clothes in his home while staying there on vacation. A police investigation revealed that during 2015 and 2017, defendant had made several recordings of the three sisters and another 16-year-old girl in various stages of undressing. Using his computer, defendant created more than 144 still images from the videos, enhancing them to better show the girls' nudity.

---

[1] *People v Enciso*, 503 Mich 920; 920 NW2d 565 (2018).

Defendant was not physically present at his sentencing, but rather participated via Polycom.[2] Defendant did not waive, on the record, his right to be physically present at sentencing. After sentencing, defendant filed an application for leave to appeal to this Court. In his application for leave to appeal, defendant argued in part that he was entitled to resentencing because he was not physically present at his sentencing. In response, the prosecution represented that defendant "chose not to be physically present at his sentencing." In particular, "[d]efendant expressed to his trial attorney that he did not wish to be physically present at sentencing because he did not wish to see the families of the victims." According to the prosecution, defendant's desire was "expressed to the trial court and the prosecutor's office." The record also reflects that before defendant pleaded guilty by videoconference in this case,[3] he had been sentenced for five subsequent offenses in another county and was incarcerated for possession of child-sexually abusive material. Two of the victims in this case were also victims in the other county's case. This Court denied defendant's application.[4] Defendant then appealed to our Supreme Court, which remanded the case to this Court for consideration as on leave granted to address, among the issues, whether:

> (1) a defendant's waiver of the right to be physically present at sentencing is valid only if accomplished on the record, see *People v Palmerton*, 200 Mich App 302[; 503 NW2d 663] (1993); and (2) a defendant's unpreserved claim regarding his or her lack of physical presence at sentencing is subject to review for plain error. See *People v Heller*, 316 Mich App 314 (2016). [*People v Enciso*, 503 Mich 920, 920 (2018).]

## II. ANALYSIS

### A. WHETHER A DEFENDANT'S WAIVER OF THE RIGHT TO BE PHYSICALLY PRESENT AT SENTENCING IS VALID ONLY IF ACCOMPLISHED ON THE RECORD

Defendant first argues that he had a constitutional right to be present at sentencing and that such a right could be waived only if made on the record. Our Supreme Court also directed us to consider that same question. We reject defendant's argument.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61

---

[2] Polycom is a company that provides video conferencing services.

[3] MCR 6.006(A) permits a circuit court to take the plea of a prisoner via two-way interactive video technology.

[4] *People v Enciso*, unpublished order of the Court of Appeals, entered May 21, 2018 (Docket No. 342965).

(2007). Defendant failed to raise before the trial court the issue of his presence at sentencing.[5] Accordingly, the trial court did not address or decide the issue, so it is unpreserved.

In its order directing us to consider this issue, our Supreme Court cited *People v Palmerton*, 200 Mich App 302; 503 NW2d 663 (1993). In *Palmerton*, the defendant, who was on bond, failed to appear for sentencing. The trial court sentenced him in absentia. The defendant later was brought before the court on an unrelated offense for a probation violation. The trial court, in lieu of resentencing the defendant on the earlier charges, stated that the sentence previously imposed would stand. The defendant appealed, arguing that he was improperly sentenced while absent. On appeal, this Court stated that "[a] valid waiver arises when the defendant specifically knows of the right to be present and intentionally abandons the protection of that right," and went on to state that "[a] valid waiver cannot be established from a silent record." *Id*. at 303. The Court also held that "[b]ecause a defendant has the same right to be present at sentencing as at trial, reasoning by analogy, the same criteria is [sic] necessary to establish a valid waiver of the right to be present for sentencing." The Court further stated that "[i]n this case, there was no explanation on the record at the time of the original sentence with regard to whether defendant knew of the sentencing date and intentionally failed to appear for sentencing. The sentencing court therefore did not have adequate information at the time of sentencing to conclude that defendant's absence constituted a valid waiver of the right to be present at sentencing." *Id*. at 304.

*Palmerton*, in turn, relied on *People v Williams*, 196 Mich App 404, 407; 493 NW2d 277 (1992), for three points: (1) a defendant may waive his right to be present during trial by failing to appear; (2) a valid waiver cannot be established from a silent record; and (3) where there is nothing on the record explaining the defendant's failure to appear, a valid waiver cannot be established. *Id*. at 303-304 (citations omitted). *Williams*, however, did not make a categorical statement that a waiver would be valid only if made on the record; rather, its analysis turned on the particular facts of that case. "*In this case*, defendant was told before her release that she had a right to be present at trial. However, there was no evidence explaining her failure to appear for trial. Waiver cannot be presumed from a silent record." *Id*. at 407 (emphasis added). *Williams* used the terms "silent record" and "no evidence" interchangeably, and thus, rather than standing for a per se rule requiring that a defendant's waiver of the right to be present be made in court and on the record, *Williams* merely requires that there be evidence showing that the defendant was aware of the right

---

[5] Defendant was sentenced before MCL 780.765(2) became effective on May 23, 2018. See 2018 PA 153. That statute provides:

> Unless the court has determined, in its discretion, that the defendant is behaving in a disruptive manner or presents a threat to the safety of any individuals present in the courtroom, the defendant must be physically present in the courtroom at the time a victim makes an oral impact statement under subsection (1). In making its determination under this subsection, the court may consider any relevant statement provided by the victim regarding the defendant being physically present during that victim's oral impact statement. This subsection applies to cases in which the sentencing of the defendant occurs on or after the effective date of the amendatory act that added this subsection.

and chose not to exercise it. Our reading of *Palmerton* is that it follows the *Williams'* analysis, and also is limited to its specific facts.[6]

Our analysis regarding waiver is supported by a long line of cases. "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right." *People v Carines*, 460 Mich 750, 763 n 7; 597 NW2d 130 (1999) (quotation marks omitted), citing *United States v. Olano,* 507 US 725, 733; 113 S Ct 1770; 123 L Ed 2d 508 (1993). The *Olano* definition of waiver ultimately traces back to *Johnson v Zerbst*, 304 US 458; 58 S Ct 1019; 82 L Ed 1461 (1938). See *Olano*, 507 US at 733. *Johnson* in turn noted that "[a] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Id*., 304 US at 464. Nothing in *Olano* or *Johnson* requires such a waiver to be on the record, but rather each calls for a case-by-case analysis of the specific facts involved. In addition, in *Palmerton* the defendant was on bond and failed to appear at sentencing. There was no evidence as to whether he had been given notice of the sentencing date and intentionally chose to not appear, or was simply unaware that sentencing had been scheduled, or whether he even was physically unable to attend. Here, by contrast, defendant was in custody and was connected to the trial court through Polycom. In addition, defendant was represented by counsel, and counsel was physically present in the courtroom. There was thus no question whether defendant was aware of the sentencing—he clearly was. Rather, the questions are whether defendant's participation through Polycom was sufficient to establish his "presence" at sentencing, and whether he knew of his right to be physically present in the courtroom.

At bottom, *Palmerton* seems to have conflated the distinction between the legal requirements of a valid waiver, and evidence which establishes the legal validity of a waiver. We agree that in many cases an on-the-record discussion will be the only way to establish the factual basis for a valid waiver. One can easily imagine, however, some cases which will not require such a discussion to establish that a defendant both knew of his rights and chose to relinquish them. For example, and purely hypothetically, imagine the following: the defendant in *Palmerton*, after his arrest, confided to a cellmate that based on his previous experience with the criminal justice system, he had chosen to flee to avoid serving a sentence. Suppose further that the cellmate was cooperating in another case, and therefore was able to record all of his conversations with Palmerton, so that there could be no dispute as to what Palmerton had said. And let us suppose further that Palmerton had stated that he knew the date and time of his sentencing, and that based on his previous experiences, he believed that not being present would not result in the judge imposing a harsher sentence. Under those circumstances, it would be difficult to see, based on the "background, experience, and conduct of the accused," and the other "particular facts and circumstances surrounding that case," that Palmerton had not made "an intentional relinquishment or abandonment of a known right or privilege." *Johnson*, 304 US at 464; see also *Taylor v United*

---

[6]Both *Williams* and *Palmerton* include the phrase "in this case" before their holdings, and consequently limit the precedential effects of their holdings. *Palmerton*, 200 Mich App at 304; *Williams*, 196 Mich App at 407.

*States*, 414 US 17, 19-20; 94 S Ct 194; 38 L Ed 2d 174 (1973), in which the defendant absconded during trial. In *Taylor*, the legal question was whether the trial court erred in permitting the trial to proceed in the defendant's absence "unless it is demonstrated that he knew or had been expressly warned by the trial court not only that he had a right to be present but also that the trial would continue in his absence and thereby effectively foreclose his right to testify and to confront personally the witnesses against him." *Id*. at 19. The Supreme Court rejected that argument, holding "we cannot accept this position. Petitioner had no right to interrupt the trial by his voluntary absence, as he implicitly concedes by urging only that he should have been warned that no such right existed and that the trial would proceed in his absence. The right at issue is the right to be present, and the question becomes whether that right was effectively waived by his voluntary absence. . . . [W]e conclude that it was." Thus, as to the first question posed by our Supreme Court, we hold that there is no requirement of an on-the-record waiver of the right to be present at sentencing, provided that the evidence establishes that a defendant made "an intentional relinquishment or abandonment of a known right or privilege." *Johnson*, 304 US at 464.

## B. WHETHER A DEFENDANT'S UNPRESERVED CLAIM REGARDING HIS OR HER LACK OF PHYSICAL PRESENCE AT SENTENCING IS SUBJECT TO REVIEW FOR PLAIN ERROR.

Our holding that defendant's failure to be physically present at sentencing did not render the sentencing categorically invalid does not end our inquiry. Under our normal standard of review, even though defendant failed to preserve the issue of his participation by Polycom, we would still review that argument for plain error. In addition, our Supreme Court also has directed us to consider that issue. The Supreme Court's order cited *People v Heller*, 316 Mich App 314; 891 NW2d 541 (2016).

In *Heller*, the defendant was not physically present for his sentencing hearing; instead, he appeared, as here, via videoconference. *Id*. at 316. The trial court did not advise Heller that he could appear personally and did not give him an opportunity to communicate privately with counsel; the defendant's counsel did not raise an objection to the defendant's physical absence. *Id.* at 315-316. This Court determined that the defendant's absence rendered his sentencing fundamentally unfair, but did not order relief on that ground, as the defendant was entitled to resentencing due to the trial court's imposition of a departure sentence, *id.* at 316-317, 321, which the defendant could reject if he wished. In discussing the defendant's lack of attendance at sentencing, the *Heller* Court did not set forth a specific standard of review. *Id*. at 321. Thus, *Heller* does not control as to whether we should review defendant's claim for plain error. Nevertheless, it is clear, both from *Heller* and from the Michigan Court Rules, that a defendant being sentenced for a felony offense may not be sentenced by videoconference. See MCR 6.006; *Heller*, 316 Mich App at 315-316.[7]

---

[7] The Sixth Circuit, in holding that Federal Rule of Criminal Procedure 43(a), like MCR 6.006, does not permit sentencing by video conference, noted "the general view adopted by our sister circuits that criminal defendants have a constitutional right to be present at sentencing. *See United States v DeMott*, 513 F3d 55, 58 (2d Cir.2008); *United States v Sepulveda–Contreras,* 466 F3d

As stated earlier, unpreserved issues are reviewed for plain error. See *Cain*, 498 Mich 108,116; 869 NW2d 829 (2015).[8] We see nothing in *Heller* or in this case which would alter that analysis.

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*Carines*, 460 Mich at 763-764 (quotation marks, citations, and brackets omitted).]

In the instant context, prejudice "requires a showing . . . that the error affected the outcome of the lower court proceedings." *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014) (quotation marks and citation omitted).

Here, in light of MCR 6.006, the error of sentencing defendant via videoconference was plain. This error was particularly obvious in that *Heller* held in 2016 that felony sentencing could not take place by videoconference, and defendant was not sentenced until 2017. Furthermore, the lower court record fails to establish that defendant waived his right to be physically present at sentencing. Defendant thus satisfies the first two prongs of plain error review.

To the extent that defendant argues he was prejudiced because he had no opportunity to consult with counsel during sentencing, we conclude that defendant has failed to demonstrate prejudice. In this case, unlike *Heller*, the record reveals that defendant conferred with defense

---

166, 169 (1st Cir 2006); *United States v Bigelow*, 462 F3d 378, 381 (5th Cir 2006); *United States v Agostino,* 132 F3d 1183, 1199 n 7 (7th Cir 1997)." *United States v Williams*, 641 F3d 758, 764 (CA 6, 2011). As the Michigan Court Rules provide a narrower ground for our ruling, we need not decide the constitutional issue. See *J & J Const Co v Bricklayers & Allied Craftsmen*, *Local 1*, 468 Mich 722, 734; 664 NW2d 728 (2003) ("[I]t is an undisputed principle of judicial review that questions of constitutionality should not be decided if the case may be disposed of on other grounds.").

[8] Furthermore, this Court recently held in *People v Bailey*, 330 Mich App 41, 59; 944 NW2d 370 (2019), that "[a]n unpreserved constitutional issue—structural or nonstructural—is reviewed for plain error affecting substantial rights." Accordingly, we need not determine whether a defendant's failure to be present for sentencing, regardless of whether such absence was knowing and voluntary, constitutes structural error, because the standard of review would be the same whether or not the error alleged was structural.

counsel and that they reviewed the presentence investigation report (PSIR) together. Defense counsel later successfully obtained the changes to the PSIR he and his client had sought. Counsel advocated for the sentences recommended by the probation department, and asked that, if the court did not sentence within the guideline range, it consider concurrent sentences. Likewise, defendant exercised his right to allocution, requesting concurrent sentences. The sentencing court rejected the prosecution's request for the maximum possible sentences, which would have constituted an out-of-guidelines sentence above the range recommended by the advisory guidelines.[9] And the same lack of prejudice would foreclose defendant's argument if we were to analyze for and find a constitutional violation, see Note 7 of this opinion, as no such constitutional argument was preserved. As such, we would review for plain error only, regardless of whether such a putative deprivation of the constitutional right to be present at sentencing would be deemed structural or non-structural. *Bailey*, 330 Mich App at 59. Consequently, we reject defendant's argument regarding his participation in the sentencing through videoconferencing.

## C. REASONABLENESS OF A CONSECUTIVE SENTENCE

Defendant additionally argues that the trial court did not provide a specific reasonable explanation to justify the imposition of a discretionary consecutive sentence. We disagree.

Defendant failed to contest the reasonableness of his consecutive sentences at the trial court level. However, there does not appear to be any further requirement for defendant, who requested concurrent sentences but received consecutive sentences, to preserve his proportionality challenge. See *People v Foster*, 319 Mich App 365, 375; 901 NW2d 127 (2017) (quotation marks and citation omitted) ("A criminal defendant need not take any special steps to preserve the question of the proportionality of her sentence."). However, "the combined term is not itself subject to a proportionality review." *People v Norfleet*, 317 Mich App 649, 663; 897NW2d 195 (2016). Rather, "the decision to impose a consecutive sentence when not mandated by statute is reviewable for an abuse of discretion." *Id*. Therefore, this Court has held that "trial courts imposing one or more discretionary consecutive sentences are required to articulate on the record the reasons for each consecutive sentence imposed." *Id*. at 654. We thus review the trial court's imposition of consecutive sentences here for abuse of discretion. MCL 752.797(4) gives a trial court discretion to impose consecutive sentences when a defendant violates MCL 752.797(3), as defendant did here. Defendant argues that the trial court did not sufficiently explain its imposition of consecutive sentences, and that the trial judge merely noted that the victims' lives were "turned upside down" by defendant's crimes.

Defendant's argument is not supported by the record. The trial judge gave a lengthy explanation as to why he imposed consecutive sentences, considering defendant's background and the nature of the offenses. The trial judge commented on defendant's family, education, and military service, but reasoned that a consecutive sentence was warranted in light of defendant's

---

[9] For a discussion of the greater precision of the term "out-of-guidelines" sentence as compared to the term "departure" under the now-advisory sentencing guidelines, see *People v Lampe*, 327 Mich App 104, 133; 933 NW2d 314 (2019) (BOONSTRA, J., concurring).

abuse of the trusted relationship he had with his victims and their families. The trial judge additionally concluded that defendant was a danger to society in general and to people who would place their trust in him in particular. Thus, the trial court did not abuse its discretion by imposing the consecutive sentences and appropriately articulated multiple reasons for its decision.

Defendant additionally argues that the trial judge erred by considering factors that were already considered by the sentencing guidelines. "[T]his Court is required to review for reasonableness only those sentences that depart from the range recommended by the statutory guidelines." *People v Anderson*, 322 Mich App 622, 636; 912 NW2d 607 (2018). In contrast, however, a sentence that falls within the appropriate sentencing guidelines range "is presumptively proportionate and must be affirmed." *People v Jackson*, 320 Mich App 514, 527; 907 NW2d 865 (2017), reversed on other grounds 504 Mich 929 (2019). Defendant's sentence was within the applicable guidelines range, and thus was proportionate.

Defendant also argues that the trial judge impermissibly relied on his religious views as the reason for imposing the sentence. This Court has held that "a sentence may not be based upon an arbitrary classification, such as race or religion." *People v Gjidoda*, 140 Mich App 294, 300; 364 NW2d 698 (1985). At sentencing, the trial judge stated:

> The considerations the Court must take into account are four; first, the fair and just punishment; something that reflects the seriousness of the wrongs that he has done, and in that regard, the Bible speaks to a circumstance like this when our Lord Jesus said, "Whoever causes one of these little ones who believe in me to sin, it would be better for him if a millstone were hung around his neck, and he were drowned in the depths of the sea."

The court also noted that defendant was "engaged in wrongful criminal—and based on the beliefs he espoused—sinful behavior." Although these passages reference the Bible, the statements were merely a reference to defendant's abuse of his position in the church to exploit his victims. The trial judge's reference to Jesus's admonition against causing children to sin is simply an acknowledgement that crimes involving children are generally considered more serious than crimes involving adults and also could have been a reference to defendant's previous position as the youth pastor for his victims. There is no basis for an inference that the trial judge imposed the consecutive sentences because defendant or the trial judge was Christian. The record shows that the trial judge relied on objective secular factors in deciding to impose the consecutive sentences, and the record further discloses that the consecutive sentences were recommended by the probation officer who prepared defendant's PSIR. Thus, the trial judge did not improperly rely on religious grounds when sentencing defendant.[10]

---

[10] Nonetheless, the trial judge should refrain in the future from interjecting such references into sentencing, both to avoid any appearance that his judicial decisions may be based on a defendant's religious beliefs, and to avoid "the perception of the bench as a pulpit from which judges announce their personal sense of religiosity and simultaneously punish defendants for offending it. Whether

## D.  VICTIM IMPACT STATEMENTS

Finally, defendant argues that the victim impact statements of the victims' parents denied defendant his right to due process at sentencing.  We disagree.

Defendant failed to contest the victim impact statements on any grounds at the trial court level.  Consequently, the issue was not raised, addressed, or decided by the trial court and is unpreserved.  See *Metamora Water Serv, Inc*, 276 Mich App at 382.  Thus, this issue will also be reviewed for plain error.  See *Cain*, 498 Mich at 116.  Additionally, questions of statutory interpretation are reviewed de novo.  *People v Hall*, 499 Mich 446, 451-452; 884 NW2d 561 (2016).  "We must give the words of a statute their plain and ordinary meaning, and only where the statutory language is ambiguous may we look outside the statute to ascertain the Legislature's intent."  *People v Morey*, 461 Mich 325, 329-331; 603 NW2d 250 (1999).

The William Van Regenmorter Crime Victim's Rights Act of 1985 (CVRA), MCL 780.751 *et seq.*, statutorily provides victims of crimes "the right to appear and make an oral impact statement at the sentencing of the defendant."  MCL 780.765(1).  The statute includes in its definition of "victim" "[a] parent, guardian, or custodian of the victim, if the victim is less than 18 years of age, who is neither the defendant nor incarcerated, if the parent, guardian, or custodian so chooses."  MCL 780.752(1)(m)(*iii*).  Each parent who made a victim-impact statement at sentencing was the parent of a victim under the age of 18.  Thus, each parent was authorized by MCL 780.752(1)(m)(*iii*) to make a victim-impact statement.

Defendant additionally argues that the parents impermissibly referenced defendant's previous prosecution in a different county, implying that defendant was a serial offender.  Defendant contends that the other case was "unrelated" to this case.  That case, however, was related to this case.  Two of the victims in this case were victims in the other case.  The parents of those victims attended defendant's sentencing in the other county and the PSIR in this case fully discussed the other case; defendant's explanation for his behavior; and how investigation of the other matter led to the discovery of defendant's earlier crimes against two of the same victims in this case as well as other victims.  MCL 771.14.  Defendant did not object to the accuracy of any of this information.  In any event, this Court has held that a trial court's exercise of discretion to allow a victim impact statement does not interfere with a defendant's due-process rights when "the evidence was not taken into consideration in determining the defendant's guilt."  *People v Waclawski*, 286 Mich App 634, 691-692; 780 NW2d 321 (2009).  Here, defendant's other conviction helped the victims' parents explain their frustration at defendant's explanation for his behavior.  Furthermore, the trial court did not rely on defendant's previous case to support its decision to impose consecutive sentences.  Thus, these statements by the parents of defendant's victims do not entitle defendant to resentencing.

Finally, defendant also argues that the victim impact statements included lengthy legal arguments that usurped the role of the prosecution.  Defendant's argument is not supported by the

---

or not the trial judge has a religion is irrelevant for purposes of sentencing."  *United States v Bakker*, 925 F2d 728, 740 (CA 4, 1991).

record. The parents of defendant's victims did not make any legal arguments during their victim impact statements. But even if they had made legal arguments, because the prosecutor does not have the authority to impose a sentence, it is unclear what prosecutorial role defendant argues the victim impact statements usurped at sentencing. *People v Siebert*, 201 Mich App 402, 429; 507 NW2d 211 (1993). Thus, defendant is not entitled to resentencing on this ground either.

For the reasons stated in this opinion, we affirm.

/s/ Mark T. Boonstra
/s/ Jonathan Tukel
/s/ Anica Letica