PEOPLE v GJIDODA

Docket No. 75270. Submitted November 20, 1984, at Detroit.—Decided January 23, 1985.

Defendant, Nikoll Gjidoda, was convicted following a bench trial in the Wayne Circuit Court of second-degree murder, assault with intent to commit murder and possession of a firearm during the commission of a felony. The trial court, Robert J. Colombo, J., sentenced defendant to life imprisonment for the murder conviction, from 50 to 100 years imprisonment for the assault conviction and two years for the felony-firearm conviction. The trial court determined that the sentences would run consecutively to a previous term imposed on the defendant as a result of his prior conviction for manslaughter, arising out of the defendant's killing of a man in Detroit, since the defendant committed the instant offenses (the killing of one of his daughters and the serious wounding of another) during the pendency of the manslaughter charge. Defendant appeals. *Held:*

1. No error occurred in regard to the trial court's finding that the defendant had a specific intent to kill each of the two victims.

2. The trial court correctly found that, although defendant was quite excited at the time of the shootings, there was no evidence of the adequate or reasonable provocation requisite to the reduction of an intentional killing to voluntary manslaughter.

3. The trial court did not abuse its discretion in deciding to make the sentences consecutive to the prior sentence for man-

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide §§ 10, 50, 53.

[2] 40 Am Jur 2d, Homicide §§ 570, 578.

[3] 40 Am Jur 2d, Homicide §§ 59-61, 114, 115.
    Modern status of test of criminal responsibility—state cases. 9 ALR4th 526.
    Mental or emotional condition as diminishing responsibility for crime. 22 ALR3d 1228.

[4] 21 Am Jur 2d, Criminal Law § 552.

[5, 6] 21 Am Jur 2d, Criminal Law § 594.
    Racial discrimination in punishment for crime. 40 ALR3d 227.

[6] 21 Am Jur 2d, Criminal Law § 588.

slaughter. There is no requirement that the judge specifically recognize his discretion on the record.

4. The trial court impermissibly considered the defendant's national origin in imposing the sentences.

The convictions are affirmed and the case remanded for resentencing in conformity with the opinion.

1. HOMICIDE — SECOND-DEGREE MURDER — MALICE — INTENT.

The states of mind encompassed by the term "malice aforethought" which satisfy the intent element of second-degree murder are the specific intent to kill, the intent to do great bodily harm, and wanton and wilful disregard of the natural tendency of behavior to cause death or great bodily harm.

2. ASSAULT AND BATTERY — ASSAULT WITH INTENT TO COMMIT MURDER — SPECIFIC INTENT TO KILL — MALICE.

Specific intent to kill is the only form of malice which supports a conviction of assault with intent to commit murder.

3. HOMICIDE — PROVOCATION — VOLUNTARY MANSLAUGHTER.

The fact finder must determine that adequate or reasonable provocation existed when an intentional killing was committed in order for such a killing to be considered voluntary manslaughter rather than murder; in determining whether the provocation is sufficient or reasonable, ordinary human nature, or the average of men recognized as men of fair average mind and disposition should be taken as the standard unless there is a finding of insanity or diminished capacity in regard to the defendant.

4. CRIMINAL LAW — SENTENCING — CONSECUTIVE SENTENCES.

The sentences imposed for conviction of a prior charged felony and any subsequent felony may run consecutively when a person who has been charged with a felony commits a subsequent felony during the pendency of the prior charged felony; the decision to make the sentences consecutive is discretionary with the sentencing judge and there is no requirement that such judge specifically recognize his discretion on the record (MCL 768.7b; MSA 28.1030[2]).

5. CRIMINAL LAW — SENTENCING — EQUAL PROTECTION.

The sentence imposed on a criminal defendant following his conviction may not be based upon an arbitrary classification such as nationality, alienage, race or religion; the sentence must be tailored to the circumstances of the case and the individual offender, not the offender's ancestry (US Const, Am XIV; Const 1963, art 1, § 2).

6. Criminal Law — Sentencing.

    The deterring of others from committing like offenses is a proper and permissible criterion for determining an appropriate sentence for a criminal defendant; such general deterrence is permissible while an arbitrary classification which provides for particularized treatment of a particular segment of a community is not permissible.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

*Matthew Posner,* for defendant on appeal.

Before: T. M. Burns, P.J., and Shepherd and M. Warshawsky,\* JJ.

Shepherd, J. Defendant was convicted in a bench trial of second-degree murder, MCL 750.317; MSA 28.549, assault with intent to commit murder, MCL 750.83; MSA 28.278, and felony-firearm, MCL 750.227b; MSA 28.424(2). He was charged with killing one of his daughters and seriously wounding another when he learned that they would testify against him in a forthcoming trial, in which he was accused of murdering a man in Detroit. The trial court sentenced defendant to life imprisonment for the murder conviction, from 50 to 100 years imprisonment for the assault conviction and the mandatory two-year term for the felony-firearm conviction. The court decided that the foregoing sentences would run consecutively to a previous term for a manslaughter conviction (arising out of the killing of the Detroit man), since defendant committed the instant offenses during the pendency of the prior charge. MCL

---

\* Circuit judge, sitting on the Court of Appeals by assignment.

768.7b; MSA 28.1030(2). We affirm the convictions, but remand for resentencing because the sentencing judge gave consideration to defendant's national origin.

First, defendant argues that the trial court's findings of fact were insufficient to support its verdict as to the principal offenses, because the court found that defendant acted intentionally, but not that he acted with malice. This claim lacks merit. The trial court found that defendant had a specific intent to kill each of the two victims. Specific intent to kill is but one of the states of mind encompassed by the term "malice aforethought", any of which satisfies the intent element of second-degree murder. *People v Aaron,* 409 Mich 672, 715; 299 NW2d 304 (1980).[1] However, specific intent to kill is the only form of malice which supports a conviction of assault with intent to commit murder. *Maher v People,* 10 Mich 212 (1862); *People v Crawford,* 128 Mich App 537, 539; 340 NW2d 323 (1983), *lv den* 418 Mich 956 (1984). Accordingly, a mere finding by the trial court that defendant acted with malice in shooting the victims would have been redundant on the one hand and insufficient on the other. No error occurred.

Defendant asserts that the trial court erred by finding him guilty of murder rather than voluntary manslaughter. MCL 750.321; MSA 28.553. The trial court found that, although defendant was quite excited at the time of the shootings, there was no evidence of the "adequate of reasonable provocation" requisite to the reduction of an intentional killing to voluntary manslaughter. *People v Townes,* 391 Mich 578, 589-590; 218 NW2d 136

---

[1] The other forms of malice are intent to do great bodily harm, and wanton and wilful disregard of the natural tendency of behavior to cause death or great bodily harm. See also, *People v Woods,* 416 Mich 581, 626-627; 331 NW2d 707 (1982), *cert den sub nom Michigan v Alexander,* — US —; 103 S Ct 3116; 77 L Ed 2d 1370 (1983).

(1974); *Maher, supra,* p 219. We agree with the trial court. Defendant's decision to shoot the victims was induced by their intention to testify against him. Although defendant was provoked, in a broad sense, that provocation is not one which we recognize as "adequate" for the purposes of the law of manslaughter. *Townes, supra,* p 590. Rather, the claimed "provocation" is nothing but the motive for the shootings. That defendant was enraged by the prospect of his daughters' testimony furnishes no basis for a manslaughter conviction. As noted in *Maher, supra,* p 220:

"Nor, on the other hand, must the provocation, in every case, be held sufficient or reasonable, because such a state of excitement has followed from it; *for then, by habitual and long continued indulgence of evil passions, a bad man might acquire a claim to mitigation which would not be available to better men, and on account of that very wickedness of heart which, in itself, constitutes an aggravation both in morals and in law.* [Emphasis added.]

"In determining whether the provocation is sufficient or reasonable, *ordinary human nature,* or the average of men recognized as men of fair average mind and disposition, should be taken as the standard—unless, indeed, the person whose guilt is in question be shown to have some peculiar weakness of mind or infirmity of temper, not arising from wickedness of heart or cruelty of disposition." (Emphasis in original.)

While this language is somewhat archaic in tone, its premise remains as valid today as it was in 1862, *i.e.,* that to protect the public and the integrity of the judicial system, there is certain conduct that we will not allow in mitigation of criminal responsibility in the absence of findings of insanity or diminished capacity—findings that are absent in this case in the specific and detailed findings of fact made by the trial judge on the

record. Although this may appear to be a harsh doctrine, especially to one who becomes subjectively enraged at the prospect of his daughters' adverse testimony, it is a doctrine that has always been a part of our law. Defendant has argued that the standards of the law should look only to the rage which was boiling within him at the moment of the events and not at an objective standard which is externally imposed by society. However, in *The Common Law,* pp 51,54,57 (Boston: Little, Brown & Co) written in 1881, the future United States Supreme Court Justice, Oliver Wendell Holmes, Jr., applied the standards to an individual defendant, stating as follows:

"They require him at his own peril to come up to a certain height. They take no account of incapacities, unless the weakness is so marked as to fall into well-known exceptions, such as infancy or madness. They assume that every man is as able as every other to behave as they command."

\* \* \*

"The test of foresight is not what this very criminal foresaw, but what a man of reasonable prudence would have foreseen.

\* \* \*

"As the purpose is to compel men to abstain from dangerous conduct, and to merely to restrain them from evil inclinations, the law requires them at their peril to know the teachings of common experience, just as it requires them to know the law."

Next, defendant argues that the sentencing judge failed to recognize that the decision to make the sentences consecutive to the prior sentence for manslaughter was discretionary. We agree that the decision was discretionary with the sentencing judge, *People v Hacker,* 127 Mich App 796, 799; 339 NW2d 645 (1983); *People v Williams,* 89 Mich

App 633, 636; 280 NW2d 617 (1979), but we know of no requirement that the judge specifically recognize his discretion on the record. Defendant committed the offenses while on bail on a pending felony charge. MCL 768.7b. We find no abuse of discretion. Nevertheless, we find it necessary to remand for resentencing on another ground.

The court below gave the following reasons for the length of the sentences imposed:

"This sentence is necessary, in my judgment, Mr. Gjidoda, for basically two reasons. First, it is necessary to protect the public from you. I consider you a very dangerous man as evidenced by your previous manslaughter conviction as well as the conviction in this court.

"Secondly, sometimes it is necessary in sentencing to send a message to the community, and I am sending a message by this sentence to a small segment of the Albanian community that they now live in the United States and they are governed by our laws, and we are not going to tolerate whatever the customs may be in Albania, and that includes the customs of dealing with family members as well as the use of guns."

Defendant urges, and we agree, that the second of the lower court's reasons amounted to an impermissible consideration of defendant's national origin. US Const, Am XIV; Const 1963, art 1, § 2.

This Court holds that a sentence may not be based upon an arbitrary classification, such as race or religion. *People v Flores,* 89 Mich App 687, 693; 282 NW2d 183 (1979), *rev'd on other grounds* 407 Mich 871 (1979); *People v Dupuie,* 52 Mich App 510, 513; 217 NW2d 902 (1974). We hold that consideration of the defendant's alienage or nationality is equally invidious and as intolerable as consideration of the race or religion of the offender. Equal protection of the laws is available to

all persons, without regard to nationality. *Yick Wo v Hopkins,* 118 US 356, 369; 6 S CT 1064; 30 L Ed 220 (1886). Distinctions in sentencing made because of the offender's ancestry are "odious to a free people whose institutions are founded upon the doctrine of equality". *Hirabayashi v United States,* 320 US 81, 100; 63 S Ct 1375; 87 L Ed 1774 (1943).

In this case, it is apparent that the judge considered defendant's ethnic background as a factor in imposing the sentences. The people urge that "sending a message" to a particular ethnic group is no more discriminatory than "sending a message" to the local community generally. This argument misses a most important difference, namely, that the basis for the sentencing decision is impermissibly based upon an arbitrary classification in the former instance, but upon general deterrence in the latter. Of course, "the deterring of others from committing like offenses" is a proper and permissible criterion for determining an appropriate sentence. *People v Coles,* 417 Mich 523, 550; 339 NW2d 440 (1983), citing *People v Snow,* 386 Mich 586, 592; 194 NW2d 314 (1972). The evil which we guard against by our decision herein is not general deterrence, but the specification of a particular segment of a community for particularized treatment, on the ground of its alleged propensity toward violent behavior. Such an approach might result in openly discriminatory sentencing of defendants based on their gender, race, age or economic status. Offenders do not represent an even cross section of the community with regard to any of these characteristics. Bureau of Justice Statistics, Report to the Nation on Crime and Justice (October, 1983), p 31.

The people argue that no group is entitled to special treatment because of its nationality, and

pray for "a remand to determine (1) whether the Detroit Albanian community considers itself a distinct ethnic community, and (2) whether violence within that community is a significant law enforcement problem". To grant such relief would only compound the error. Such an inquiry into the ethnicity of a particular group of persons to the end of sanctioning disparate treatment of this defendant would itself violate the equal protection clause. Moreover, even if the people could show that a substantial percentage of persons with defendant's national background are prone to violence, that background would remain an inappropriate consideration at the time of sentencing. The sentence must be tailored to the circumstances of the case and the individual offender, not the offender's ancestry. *People v McFarlin,* 389 Mich 557, 574; 208 NW2d 504 (1973).

The people further submit that the terms imposed were justified in light of the nature of the offenses, without regard to the judge's references to the "Albanian community". We neither conclude that the sentences shock our conscience, nor that they constitute an abuse of discretion because of their sheer length. *Coles, supra.* However, we cannot permit any regard for the defendant's nationality as a partial basis for a sentence, even if the result lies within the range of the sentencing judge's discretion.

It is clear from the above-quoted language of the trial judge that he placed great emphasis on the nationality issue in imposing a sentence within the range of his discretion. While we are not permitted to fix a sentence, we trust that the trial court will exercise its discretion anew by imposing a sentence with the nationality factor eliminated. We note with approval that the trial court also

placed great emphasis on the danger that the defendant poses to the public.

Accordingly, we affirm the convictions but remand for resentencing in conformity with this opinion.

We do not retain jurisdiction.