# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
October 21, 2014

Plaintiff-Appellee,

v

No. 316228
Muskegon Circuit Court
LC No. 12-062872-FC

PAUL ALAN OSBORN,

Defendant-Appellant.

Before: BORRELLO, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his convictions, after a bench trial, of assault with intent to commit murder, MCL 750.83, three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and resisting arrest, MCL 750.479. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 44 to 70 years in prison for assault with intent to commit murder, two years for each felony-firearm conviction, four to 20 years for felon-in-possession, and three to 15 years for resisting arrest. Because defendant has not established error warranting relief, we affirm.

Defendant's convictions arise from the shooting and injuring of police officer Monica Shirey. On December 7, 2012, defendant drank alcohol and took some of his wife's Klonopin.[1] At some point that night, or in the early morning hours of December 8, defendant attacked and beat his wife. She escaped to the next-door neighbor's house, where she called the police. Robert Bennett, the next-door neighbor, and TE, defendant's wife's son who was at the Bennett home at the time, then walked next door to defendant's home. While looking through a window, both men observed defendant holding and loading a gun. According to TE, defendant placed three guns on a table and said, "people are gonna die tonight." Defendant walked outside to TE and Bennett and informed the two that he was not mad at them and that he only wanted to kill his wife. At this point, one of defendant's guns accidentally discharged, striking Bennett in the leg. Bennett then returned to his home and called the police.

---

[1] Klonopin is a trade name of the drug clonazepam, a benzodiazepine and Schedule IV controlled substance.

Later, as the police began to arrive, TE and defendant walked back to defendant's house. Defendant went into his bedroom and reloaded the gun he was holding. Defendant and TE left defendant's house and walked back toward his driveway. According to TE, defendant said, "I'm at least taking one of 'em down with me" and "it'll be done quick." A group of officers arrived and defendant approached them from about 100 feet away. An officer shined his flashlight at defendant, and defendant fired at the officers. Defendant's shot hit Shirey in the legs. After defendant was in custody, he asked an officer, "Did I kill her?" The officer informed defendant that he had not and defendant responded, "That's too bad." Defendant also asked an officer how his "buddy was doing" in reference to Shirey.

Defendant first argues that the prosecution presented insufficient evidence to convict him of assault with intent to commit murder.[2]

> In ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. A reviewing court is required to draw all reasonable inferences and make credibility choices in support of the trier of fact's verdict. [*People v Strickland*, 293 Mich App 393, 399; 810 NW2d 660 (2011) (quotation marks and brackets omitted).]

"The elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Lawton*, 196 Mich App 341, 350; 492 NW2d 810 (1992). Defendant only challenges the finding that he acted with the intent to kill. "[S]pecific intent to kill is the only form of malice which supports a conviction of assault with intent to commit murder." *People v Gjidoda*, 140 Mich App 294, 297; 364 NW2d 698 (1985). "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Here, defendant was seen in a room with guns where he stated, "people are gonna die tonight." Bennett's girlfriend testified that defendant made statements about taking out police officers that night. As the police began to arrive, defendant reloaded his gun and stated, "I'm at least taking one of 'em down with me" and "it'll be done quick." Defendant admitted that when he approached the officers, he was trying to shoot in their general direction. After shooting his gun at Shirey, defendant asked, "Did I kill her?" And, when told "no," defendant responded, "That's too bad." Thus, defendant's statements before and after the shooting sufficiently established that defendant intended to kill Shirey. Moreover, defendant's use of a gun, an "instrument . . . naturally adapted to produce death," also supports a finding that defendant intended to kill Shirey. *Taylor*, 422 Mich at 568. Accordingly, we find that sufficient evidence existed for a rational trier of fact to conclude that defendant intended to kill Shirey.

Defendant nevertheless argues that he did not possess the specific intent to kill because

---

[2] Whether a defendant's conviction was supported by sufficient evidence is reviewed de novo. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010).

he was involuntarily intoxicated during the incident. "[T]he defense of involuntary intoxication is part of the defense of insanity." *People v Caulley*, 197 Mich App 177, 187; 494 NW2d 853 (1992). Under MCL 768.20a, a defendant must provide notice to the trial court that he is planning to raise an insanity defense. Defendant did not provide such a notice in this case. Defendant's failure to provide a notice of insanity defense precluded him from offering evidence at trial in support of that defense. *People v Wilkins*, 184 Mich App 443, 449-50; 459 NW2d 57, 60 (1990). Of more importance, defendant does not offer any substantive evidence to suggest that he was involuntarily intoxicated at the time of his crimes. There is certainly no evidence that defendant became involuntarily intoxicated on alcohol. See *Caulley*, 197 Mich App at 187 (citations omitted) ("Voluntary or self-induced intoxication is caused by substances which the defendant knows or ought to know have the tendency to cause intoxication and which he knowingly introduced or allowed to be introduced into his body").

With regard to his intoxication on his wife's prescribed Klonopin, there is similarly no evidence that defendant was entitled to an involuntary intoxication defense. Indeed, defendant does not dispute that he voluntarily ingested the Klonopin, which he was not prescribed, in conjunction with alcohol. There was also testimony that defendant had previously taken the drug, and thus it cannot be shown that defendant did "not know or have reason to know that the prescribed drug is likely to have [an] intoxicating effect." *Id*. at 188. Moreover, defendant had ingested alcohol and, therefore, cannot show that "the prescribed drug [again, defendant himself was not prescribed Klonopin], not another intoxicant . . . caused the defendant's intoxicated condition." *Id*. Lastly, defendant cannot establish that, as a result of his ingestion of unprescribed Klonopin, he was rendered legally insane at the time he shot Shirey. *Id*. In sum, even if defendant had properly raised the involuntary intoxication defense, there is no indication that he could prove that he was involuntarily intoxicated at the time of these crimes. The trial court was thus permitted to find that defendant was sane at the time of the shooting and that defendant possessed the specific intent to kill necessary to convict of assault with intent to commit murder.

Defendant next argues that the prosecution improperly shifted the burden of proof. First, defendant argues that the prosecutor impermissibly insinuated that defendant needed to provide other witnesses or evidence to corroborate his testimony, specifically that defendant was intoxicated and not in his right mind, as well as the assertion that defendant is a good shot.[3]

"A fundamental pillar of our legal system is that a person is presumed innocent until proven guilty." *People v Rosales*, 160 Mich App 304, 312; 408 NW2d 140 (1987). "Accordingly, the prosecution may never shift its burden to prove that defendant is guilty beyond a reasonable doubt and obligate the defendant to prove his innocence." *Id.* "However, where a defendant testifies at trial or advances, either explicitly or implicitly, an alternate theory of the case that, if true, would exonerate the defendant, comment on the validity of the alternate theory cannot be said to shift the burden of proving innocence to the defendant." *People v Fields*, 450

---

[3] These arguments are unpreserved, and, therefore, we review them for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

-3-

Mich 94, 115; 538 NW2d 356 (1995). "Although a defendant has no burden to produce any evidence, once the defendant advances evidence or a theory, argument on the inferences created does not shift the burden of proof." *Id.* "[C]ommenting on a defendant's failure to call or ask particular questions of a witness 'does not have the effect of shifting the burden of proof unless it taxes the exercise of the defendant's right not to testify. . . .' " *Id.* at 111 n 21 (citation omitted). Here, defendant testified that he took Klonopin and drank alcohol, and he testified that he was not himself the night of the shooting. Defendant also testified that he was an expert marksman. By offering this testimony, defendant advanced "an alternate theory of the case," namely that he did not possess the specific intent necessary to commit the crime due to his mental state and because if he wanted to kill, he would have aimed for a head or torso. *Fields*, 450 Mich at 115. We therefore find that "the prosecution, by commenting on the nonproduction of corroborating [] witnesses, [was] merely pointing out the weakness in defendant's case" and did not "improperly shift[] the burden of proof to the defendant." *Id.* at 112 (citation omitted).

Second, defendant argues that the prosecution improperly referenced a conversation that he could not recall and improperly referenced a statement to a detective made by defendant's sister pertaining to defendant's position in the military. Although we agree with defendant that the challenged references were improper, *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010), we find that defendant has not established that the error affected his substantial rights, *Carines*, 460 Mich at 763-764. Evidence consists of "only the sworn testimony of witnesses and the exhibits admitted into evidence." *People v Mesik (On Reconsideration)*, 285 Mich App 535, 541; 775 NW2d 857 (2009). The prosecution's statements were not evidence, and "[i]n a bench trial, the trial court is presumed to know the applicable law." *People v Lanzo Const Co*, 272 Mich App 470, 484; 726 NW2d 746 (2006). In addition, defendant himself confirmed the statement made by his sister. Lastly, the record contains overwhelming evidence to support the trial court's verdicts, independent of the statements, which were of little relevance.

Defendant also argues that defense counsel was ineffective for failing to object to the prosecution's allegedly improper statements and burden shifting. Because the prosecution did not improperly shift the burden of proof, defense counsel was not ineffective for failing to object. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Regarding the prosecution's references to defendant's conversations and to the prosecution's reference to the statement made by defendant's sister, because the statements were improper, defense counsel was objectively unreasonable for failing to object. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). Defendant, however, has not shown "the existence of a reasonable probability that, but for counsel's error[s], the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 599; 623 NW2d 884 (2001). As discussed, the prosecution's questions were not evidence, there is no evidence that the trial court improperly relied on or considered the statements, defendant himself confirmed his sister's statement, and the record contains overwhelming evidence supporting the trial court's verdicts independent of the challenged statements.

Defendant next argues that two officers improperly testified to defendant's lack of

remorse at the scene and that an officer improperly testified that defendant intended to kill him.[4] "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." MRE 704. However, "a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense." *People v Bragdon*, 142 Mich App 197, 199; 369 NW2d 208 (1985). The testimony that defendant lacked remorse after the shooting did not constitute an opinion of a defendant's guilt or innocence. See *People v Paquette*, 214 Mich App 336, 342; 543 NW2d 342 (1995). Defendant's conduct after the shooting was relevant to the determination of whether he possessed the specific intent required for a conviction of assault with intent to commit murder, and the statements were not opinions regarding defendant's guilt or innocence, but were merely statements that had bearing on defendant's intent. *Id.* Moreover, we find that the officer's testimony that he felt that defendant intended to kill him was proper. Under MRE 701, a lay witness may testify about opinions or inferences that are "rationally based on the perception of the witness." Here, the officer was explaining his personal perception of what occurred during his encounter with defendant, which was proper. Accordingly, defendant has not established plain error pertaining to this testimony.

Defendant finally argues that the trial court improperly considered defendant's lack of remorse during sentencing. "A sentencing court cannot base a sentence even in part on a defendant's refusal to admit guilt." *People v Dobek*, 274 Mich App 58, 104; 732 NW2d 546 (2007). "However, evidence of a lack of remorse can be considered in determining an individual's potential for rehabilitation." *Id.* Here, the trial court noted at sentencing that it was taking into account "how much if any opportunity [defendant] should have to re-enter society." During this discussion, the trial court noted that it took into account defendant's "absolute lack of remorse" regarding the incident. Thus, the trial court merely took into account defendant's lack of remorse for what happened to Shirey in determining that defendant was likely unable to be rehabilitated in a way to safely re-enter society. Moreover, the trial court sentenced defendant within the applicable sentencing guidelines range and provided an adequate rationale for imposing that sentence. Reversal is unwarranted. See *id*. at 105-106.

Affirmed.

/s/ Stephen L. Borrello
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro

---

[4] These unpreserved arguments are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.