*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HURMIZ RISKO ISHAK,

        Defendant-Appellant.

UNPUBLISHED
November 9, 2021

No. 351367
Oakland Circuit Court
LC No. 2018-269052-FC

Before: CAVANAGH, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury conviction of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a), and sentence of 4 to 15 years' imprisonment. We affirm defendant's conviction, but remand for resentencing.

The 66-year-old defendant, a subdeacon and sacrist, was convicted of CSC-III for inserting his penis into the mouth of the 14-year-old male victim in 2017, at their church in Troy. The victim testified about numerous sexual acts perpetrated upon him by defendant, including fellatio and anal sex. In a police interview, defendant made statements admitting that his penis entered the victim's mouth one time. The prosecution presented evidence from two other-acts witnesses, who testified that defendant had inappropriately touched them at the church when they were teenagers. At trial, the defense denied any wrongdoing, argued that the victim's testimony was inconsistent and not credible, and argued that defendant never actually made an admission to the police and his allegedly inculpatory statement was the result of confusion and difficulties with the English language.

Defendant was charged with three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, on the basis of the following alleged sexual acts: (1) entry of defendant's penis into the victim's mouth; (2) entry of defendant's penis into the victim's anal opening; and (3) entry of the victim's penis into defendant's mouth. The jury found defendant not guilty of CSC-I for the first count, but guilty of the lesser offense of CSC-III, and not guilty of the remaining two CSC-I charges.

-1-

## I. EVIDENTIARY ERROR

Defendant first argues that he is entitled to a new trial because the trial court erroneously refused to allow him to present character witnesses. Defendant contends that the trial court's exclusion of this testimony was based on its misunderstanding of the admissibility of such evidence. We generally review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 251-252; 934 NW2d 693 (2019). In this case, however, we conclude that defendant's substantive claim of evidentiary was waived.

At trial, after defense counsel announced his intent to call character witnesses, the trial court asked counsel to explain why character evidence would even be admissible when "character has not been assailed," stating:

> If—if you look at—at Rule 404 and Rule 404(b) in particular, what the Rules of Evidence try to do is exclude evidence of character to the extent that it's introduced or to show the propensity to commit a crime. That's been determined by the courts up and down to be inadmissible. And so no, you don't—neither side gets to march in character witnesses to talk about the character of the Defendant you know, as it relates to the—the likelihood of him committing crimes. It meets some—some specific exclusions, you know, under 404(b), because it is like—you know, I have to prove motive and scheme and . . . all those sorts of things, but generally speaking, you know, character witness to tell the truth or not tell the truth sometimes is admissible under certain circumstances, but it's really limited.

After additional arguments, the trial court directed counsel to provide authority supporting his position by the next day, which counsel did. The next day, the trial court noted that counsel's memorandum was not in the form of an offer of proof and it was difficult to "even glean your argument from this" or know what the proposed testimony would be. The court then noted that counsel appeared to be conceding that character testimony would not be admissible if not responsive to a prosecutorial attack:

> *The court*: It seems like you're conceding what my initial concern was, was that the straight up character testimony is not admissible.
>
> * * *
>
> But it does appear that at least we are in agreement that you are conceding that the—simply the character testimony would not be admissible . . . . [a]s propensity [evidence].
>
> *Defense counsel*: *Right. You're right.* [Emphasis added.]

Trial counsel did not further pursue the admissibility of any character testimony.

By expressly agreeing with the trial court's understanding, correct or not, that defendant's proposed testimony would not be admissible, defendant waived appellate review of his substantive claim of evidentiary error. See *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011).

Defendant's waiver extinguished any error, leaving no error to review. See *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000). ).[1]

Defendant alternatively argues, however, that trial counsel was ineffective for conceding that the trial court's understanding of the inadmissibility of character evidence was correct, and for not presenting a proper argument in favor of the admissibility of the testimony. We disagree.

Because defendant failed to raise this ineffective-assistance claim in the trial court in a motion for a new trial or request for an evidentiary hearing, our review of this issue is limited to mistakes apparent on the record. See *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id.* "A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

Although "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion," MRE 404(a), "[u]nder MRE 404(a)(1) a defendant may offer evidence that he or she has a character trait that makes it less likely that he or she committed the charged offense." *People v Roper*, 286 Mich App 77, 93; 777 NW2d 483 (2009). MRE 405(a) provides that, "[i]n all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. . . ." Under these court rules, a defendant charged with criminal sexual conduct is generally permitted to present character evidence that he or she "only engaged in appropriate activities with . . . children." *People v Lukity*, 460 Mich 484, 498; 596 NW2d 607 (1999). It does appear that the trial court demonstrated a misunderstanding of these character-evidence rules. Thus, to the extent that trial counsel expressed agreement with the trial court's understanding of the rules, and made no effort to either correct the court's understanding or to otherwise explain why the rules permitted the proposed testimony, counsel's performance was objectively unreasonable. There is no apparent strategic reason for counsel to have agreed with the trial court's conclusory statement regarding the general inadmissibility of character testimony.

Defendant has not demonstrated, however, that he was prejudiced by counsel's failure in this regard. Considering the jury's verdict and the remaining evidence presented at trial, there is no reasonable probability that defendant would not have been convicted but for trial counsel's error. Defendant was convicted of CSC-III for the count alleging entry of his penis into the victim's mouth. The jury's verdict strongly indicates that it placed great weight on defendant's

---

[1] Even if we concluded the issue was preserved and the trial court erred, we would not grant relief. As will be discussed in regard to defendant's claim of ineffective assistance, given the proofs, particularly defendant's confession, we conclude any error in excluding character evidence would have been harmless.

admissions in his police interview. Regardless of defendant's alleged character of being a law-abiding citizen and an appropriate caretaker of children, defendant admitted that his penis was in the victim's mouth one time. Although defendant attempted to attribute this admission to a lack of understanding of the English language, witnesses testified that he was able to understand English well and that he participated in a prior interview and a telephone call that were conducted in English without any indication that he did not understand the conversation or questions. More significantly, during the interview in which defendant made the admissions, he was provided with the assistance of an interpreter and, although he spoke in English for most of the interview and rarely used the interpreter, he was asked multiple times, in both English and Arabic, about his admission that his penis was in the victim's mouth and he responded consistently each time. Defendant never indicated that he did not understand the questioning, in either language, and the fact that he responded consistently to the multiple questions about his penis entering the victim's mouth refutes any suggestion that he did not understand what he was admitting to. In his interview, defendant also consistently denied other allegations of sexual abuse. The fact that the jury acquitted defendant of other allegations of sexual abuse, which he denied in his interview, but convicted him on the sole count that was consistent with his admission, strongly indicates that the jury placed great weight on defendant's admission and rejected any suggestion that the admission was the product of confusion stemming from defendant's lack of understanding of the English language. Further, the proposed character testimony would not have been relevant to the issue whether defendant's admission lacked probative value because of his difficulties understanding the English language. That is, any testimony regarding defendant's reputation as a law-abiding citizen and caretaker of children would not have made it more or less probable that the only reason he admitted, multiple times, to inserting his penis into the victim's mouth was because of his difficulties understanding the English language. Under these circumstances, there is no reasonable probability that any character testimony would have made a difference in the outcome of the proceedings.

In sum, to the extent that trial counsel's performance was deficient for agreeing with the trial court's misunderstanding of the evidentiary rules and for not offering any argument explaining why the rules of evidence would permit the proposed character testimony, there is no reasonable probability that the lack of general character-related evidence affected the outcome of the trial. It is apparent from the jury's verdict that it placed great weight on defendant's admission to his penis being in the victim's mouth and rejected defendant's claim that this admission was attributable to confusion stemming from language difficulties. Further, any character testimony would not have been relevant to the issue of defendant's ability to comprehend the nature of his admissions. Therefore, defendant has not demonstrated that he was prejudiced by trial counsel's error.

## II. MOTION TO SUPPRESS DEFENDANT'S STATEMENT

Next, defendant argues that the trial court erred by denying his motion to suppress his statements. Defendant argues that the statements were inadmissible because they were the product of custodial questioning and conducted without *Miranda*[2] warnings. We disagree.

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

As explained in *People v Clark*, 330 Mich App 392, 415; 948 NW2d 604 (2019):

> This Court reviews for clear error a trial court's factual findings in a ruling on a motion to suppress evidence. A trial court's factual findings are clearly erroneous when this Court is left with a definite and firm conviction that the trial court made a mistake. The decision whether to admit evidence is within a trial court's discretion. This Court reverses it only where there has been an abuse of discretion. A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. To the extent that a trial court's ruling on a motion to suppress involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo. [Citations and quotation marks omitted.]

Statements of a defendant made during a custodial interrogation are inadmissible unless the defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment rights. *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966); *People v Abraham*, 234 Mich App 640, 644; 599 NW2d 736 (1999). "It is well settled that *Miranda* warnings need be given only in situations involving a custodial interrogation." *People v Zahn*, 234 Mich App 438, 449; 594 NW2d 120 (1999). A custodial interrogation occurs when law enforcement officers initiate questioning after the accused "has been taken into custody or otherwise deprived of his freedom of action in a significant way." *Id.* (citation omitted). Stated differently, a person is in custody where the "person has been formally arrested or subjected to a restraint on freedom of movement or of the degree associated with a formal arrest." *People v Peerenboom*, 224 Mich App 195, 197; 568 NW2d 153 (1997). Whether the accused was in custody depends on the totality of the circumstances, but the key question is whether the accused could reasonably believe that he was not free to leave. *Zahn*, 234 Mich App at 449. This inquiry "depends on the objective circumstances of the interrogation rather than the subjective views harbored by either the interrogating officers or the person being questioned." *Id.* Relevant factors to consider in making this determination include "the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Howes v Fields*, 565 US 499, 509; 132 S Ct 1181; 182 L Ed 2d 17 (2012) (citations omitted).

The totality of the objective circumstances indicate that defendant was not "in custody" during the interview such that *Miranda* warnings were required. The interviewing detective called defendant on the telephone and arranged a time for him to come to the police station for an interview. Defendant came to the police station on his own accord. Although the interview occurred at the station, "the requirement of warnings [are not] to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." *People v Mendez*, 225 Mich App 381, 384; 571 NW2d 528 (1997) (citation omitted). The interview lasted approximately one hour, which would not, by itself, have caused a reasonable person to believe that he was unable to leave or unable to terminate the interview. In *Mendez*, this Court held that an "interview [that] lasted approximately 1 1/2 hours" at the police station did not amount to the defendant being "in custody." *Id.* at 383. Defendant was never arrested, handcuffed, or restrained in any way. During the interview, he was advised in both English and Arabic that he was free to leave at any time. In specific, the interviewing detective stated that defendant was "free to leave at any time and this is voluntary," and then the Arabic

interpreter[3] stated, "I want to let you know at your choice you can leave this place at any time you like." When defendant followed up with, "What do you mean?," the Arabic interpreter stated, "Ok I'll say it again. It means now, if you want to leave here, it is your choice if you like to stay you can stay, and if you like to leave you can leave it is your choice." Defendant then asked the interpreter in Arabic why he was summoned there; the interpreter interpreted the question into English, and Detective Shuler then explained that she asked defendant to come in because she wanted to talk to him. Although defendant argues that he was confused by this exchange, there was nothing about the objective circumstances surrounding this exchange that would have caused a person to reasonably believe they were not free to leave. Indeed, the trial court specifically addressed this exchange and found that defendant "understood that he'd just been advised that if he wants to leave, he can leave."

Despite defendant's argument regarding his subjective view, the record shows that defendant went to the police station voluntarily and was advised in both English and Arabic that he was free to leave the interview at any time. The pertinent inquiry is objective, not subjective. *Zahn*, 234 Mich App at 449. Further, defendant did not require a thorough understanding of English to know that he agreed to meet the detective at the police station, went there voluntarily, and was not restrained in any way during the interview. At the end of the approximate hour-long interview, defendant did in fact leave the police station without hindrance, even commenting on how nice the detective was to him. Consequently, the trial court did not err by finding that defendant was not in custody, and therefore, *Miranda* warnings were not necessary. Accordingly, the trial court did not err by denying defendant's motion to suppress his statement.

### III. SENTENCE

In his last claim, defendant argues that he is entitled to resentencing because the trial court failed to justify its decision to impose a sentence outside the sentencing guidelines recommended minimum sentence range of 24 to 40 months. "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "Resentencing will be required when a sentence is determined to be unreasonable." *Id*. When reviewing a departure sentence for reasonableness, we must review "whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender. *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017); see also *People v Dixon-Bey*, 321 Mich App 490, 521; 909 NW2d 458 (2017).

The scoring of defendant's sentencing guidelines resulted in a total offense variable (OV) score of 60 points and zero prior record variable points, which placed him in the A-V cell of the applicable sentencing grid, for which the minimum sentence range is 24 to 40 months for this class

---

[3] In addition to the tape of the interview, the jury also heard testimony from a second translator who testified that she reviewed the accuracy of the translation and found no errors.

B offense. MCL 777.16y; MCL 777.63. The trial court departed from this range and imposed a minimum sentence of 48 months.

Although the sentencing guidelines are only advisory, *Lockridge*, 498 Mich at 365, "the guidelines 'remain a highly relevant consideration in a trial court's exercise of sentencing discretion' that trial courts 'must consult' and 'take . . . into account when sentencing.' " *Steanhouse*, 500 Mich at 474-475, quoting *Lockridge*, 498 Mich at 391. "[D]epartures [from the sentencing guidelines range] are appropriate where the guidelines do not adequately account for important factors legitimately considered at sentencing[.]" *Milbourn*, 435 Mich at 657. "The 'key test' is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Steanhouse*, 500 Mich at 472, quoting *Milbourn*, 435 Mich at 661. Factors that may be considered by a trial court under the proportionality standard include, but are not limited to:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Walden*, 319 Mich App 344, 352-353; 901 NW2d 142 (2017) (citation omitted).]

If this Court "determines that [the] trial court has abused its discretion in applying the principle of proportionality by failing to provide adequate reasons for the extent of the departure sentence imposed, it must remand to the trial court for resentencing." *Steanhouse*, 500 Mich at 476.

In this case, the trial court gave several reasons for exceeding the sentencing guidelines minimum sentence range. Defendant now challenges four of the trial court's reasons for departure. Defendant first argues that his departure sentence was improperly based in part on his ethnicity or religion. He argues that the trial court made comments about his and the victim's Chaldean ethnicity, and reasoned that "Chaldean victims of sex crimes experience greater shame than others might, and so the Chaldean perpetrator of such a crime should suffer greater punishment."

MCL 769.34(3)(a) provides that "[t]he court shall not use an individual's . . . race, ethnicity . . . or religion to depart from the appropriate sentence range." Defendant compares the trial court's commentary in this case to those in *People v Gjidoda*, 140 Mich App 294, 301; 364 NW2d 698 (1985), in which this Court concluded that the trial court improperly "considered [the] defendant's ethnic background as a factor in imposing the sentences." *Id*. The trial court had commented:

> I am sending a message by this sentence to a small segment of the Albanian community that they now live in the United States and they are governed by our laws, and we are not going to tolerate whatever the customs may be in Albania, and that includes the customs of dealing with family members as well as the use of guns. [*Id*. at 300.]

Unlike the trial court's comments in this case, the court in *Gjidoda* expressly stated its intent to use the defendant's ethnic background as part of the sentence. In this case, the trial court's comments do not suggest that it was using defendant's religion or ethnicity to increase his sentence, but rather, it was considering the impact of defendant's conduct on the church and the local ethnic

community, which it described as a "shame-based culture," whereby victims are ostracized from the community as of result of this type of conduct. The trial court discussed at length certain factors that are unique to the Chaldean culture, which defendant and the victim were both part of. Considered as a whole, the trial court's comments do not reveal that the court was using defendant's mere ethnicity as a factor in sentencing.

Next, defendant challenges the trial court's statements that there were "multiple acts of sexual abuse that go beyond even those scored in OV 13," and that the victim testified regarding "at least four or more acts of sexual abuse." Defendant observes that the victim testified regarding five sexual acts, and because the jury rejected two of the allegations, only three could be considered at sentencing. Thus, defendant contends that the trial court improperly based its departure sentence on its own finding that defendant had committed conduct for which the jury had acquitted him, contrary to *People v Beck*, 504 Mich 605, 609; 939 NW2d 213 (2019) (a trial court cannot rely on "acquitted conduct when imposing sentence"). In this case, although the trial court did not make an explicit finding that it was relying on that alleged conduct, it appears that the court did use acquitted conduct to increase defendant's sentence. Indeed, the prosecution acknowledges that "there is unclarity here as to whether the trial court actually relied on acquitted conduct in fashioning the sentence." Therefore, this reason cannot support the trial court's departure from the guidelines range.

Defendant also argues that the trial court improperly considered the psychological harm to the victim's family, but we conclude that this was a permissible ground for departure. The trial court relied on the victim's parents' impact statement, information from an advocate for the church, and other exhibits it had received in finding that the victim's family members had suffered long-term trauma. As defendant observes, OV 4 could not be scored to account for any psychological harm to the victim's family members because that variable only considers psychological injury to a victim. MCL 777.34. Although OV 5 considers psychological injury to a victim's family member, it can only be scored in homicide cases.[4] MCL 777.35(1); MCL 777.22(1). Because the trial court was presented with substantial evidence documenting the psychological impact of defendant's conduct on the victim's family members, which was not accounted for in the scoring of the sentencing guidelines, the trial court did not err by considering that evidence as a basis for departure.

Lastly, defendant argues that the trial court improperly speculated that he may have victimized others who failed to come forward. The trial court actually stated: "And my concern quite frankly is—is how many other children might have been involved in this and how many might in the future if this activity is not curbed." Although this statement, viewed in isolation, could be viewed as an improper basis for departure, viewed in context, it is apparent that the trial court was commenting on defendant's potential for rehabilitation, lack of remorse, and the need to protect others from defendant's conduct. Indeed, the trial court referred to the other-acts witnesses, as well as defendant's effort to blame the victim for the sexual activity. These are permissible

---

[4] "OV 5 is scored when a homicide or homicide-related crime causes psychological injury to a member of a victim's family." *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017) (footnote omitted).

factors for a court to consider in determining a proportionate sentence. *Walden*, 319 Mich App at 352-353; *People v Solmonson*, 261 Mich App 657, 671; 683 NW2d 761 (2004).

In sum, one of the reasons given by the trial court for departing from the guidelines range (i.e., its reference to acquitted conduct) was an impermissible reason for imposing a departure sentence. See *Beck*, 504 Mich at 609. Although the trial court provided other permissible reasons that would support a departure from the guidelines range, and the trial court may well have departed from the guidelines range on the basis of those remaining reasons, the court did not adequately explain its reasoning for the extent of the departure imposed, and it is unclear whether the court would have departed to the same extent without the one improper reason for departure. Accordingly, we remand for resentencing. See *Steanhouse*, 500 Mich at 476.

We affirm defendant's conviction, but vacate defendant's sentence and remand for resentencing. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola

-9-