*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 13, 2024

Plaintiff-Appellee,

v

No. 362531
Wayne Circuit Court
LC No. 20-001739-01-FC

JIMMY JERMAINE PICKETT,

Defendant-Appellant.

Before: MURRAY, P.J., and RIORDAN and D. H. SAWYER*, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of second-degree murder, MCL 750.317, for which he was sentenced as a third-offense habitual offender, MCL 769.11, to 45 to 60 years' imprisonment. We affirm.

## I. FACTUAL OVERVIEW

Defendant's conviction arises from the February 11, 2020 beating death of 58-year-old Bashar Kallabat inside a room at the JZ Motel in Detroit. There was evidence that Kallabat arranged for a Lyft ride to bring defendant, who was 24 years old, to his motel room. Over an approximate three-hour period, the men engaged in sexual activities and used drugs. Surveillance video captured defendant leaving the motel room and getting on a bus. When a motel clerk went to Kallabat's room to ensure that he had checked out after his paid three-hour stay, he discovered Kallabat's deceased body on the floor. The medical examiner testified that the cause of Kallabat's death was blunt force trauma to the head. Kallabat was struck at least 12 times in the head and had four separate skull fractures, two of which were likely inflicted while he was on the ground. Defendant was arrested the next day and was in possession of Kallabat's iPhone and iPad.

Defendant testified in his own defense, asserting that he acted in self-defense when he struck Kallabat during a sudden fistfight. Defendant testified that he needed to leave, but Kallabat angrily stated that he had not yet ejaculated, so defendant needed to stay longer. Kallabat refused to allow defendant to leave, hit him in the face, and started choking him. In response, defendant punched Kallabat three times. Kallabat fell, got up, and charged toward defendant again.

_____

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

Defendant punched Kallabat three more times. After the last punch, Kallabat fell, striking his head on a table on the way down. The defense alternatively argued that the evidence at trial supported a verdict of only voluntary manslaughter, not first-degree murder.

Defendant was charged with alternative counts of first-degree premeditated murder and first-degree felony murder, and an additional count of unarmed robbery. At trial, the trial court also instructed the jury on second-degree murder and voluntary manslaughter as lesser offenses to the premeditated murder charge. The court also instructed the jury on the defense theory of self-defense. The jury found defendant guilty of second-degree murder, and not guilty of the additional counts of first-degree felony murder and unarmed robbery.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that defense counsel was ineffective by failing to ensure that the jury was properly instructed that, to prove the malice element of second-degree murder, the prosecution had the burden of disproving heat of passion and provocation beyond a reasonable doubt. We disagree.

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*. The effective assistance of counsel is presumed, and the burden is on the defendant to establish the contrary. *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014).

### A. *MULLANEY*

Defendant principally relies on *Mullaney v Wilbur*, 421 US 684; 95 S Ct 1881; 44 L Ed 2d 508 (1975), in support of his claim that the jury instructions were deficient. In *Mullaney*, the defendant challenged a Maine murder statute that allowed any intentional or criminally reckless killing to be punished as murder "unless the defendant proves by a fair preponderance of the evidence that it was committed in the heat of passion on sudden provocation, in which case it is punished as manslaughter." *Id*. at 691-692. The Supreme Court held that the statute was unconstitutional because "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." *Id*. at 704. The Supreme Court later clarified that its decision should be narrowly construed. In *Patterson v New York*, 432 US 197; 97 S Ct 2319; 53 L Ed 2d 281 (1977), the defendant argued that *Mullaney* prohibited a state from permitting guilt or punishment "to depend on the presence or absence of an identified fact without assuming the burden of proving the presence or absence of that fact, as the case may be, beyond a reasonable doubt." *Id*. at 214. The Court rejected that interpretation. Although the Court acknowledged that *Mullaney* requires a state to prove "every ingredient of an offense beyond a reasonable doubt" and prohibits a state from "shift[ing] the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense," the Court stated that it was "unnecessary" to have

gone further in *Mullaney*. *Id*. at 215. *Patterson* thereby limited *Mullaney* to situations where a fact is presumed or implied against a defendant. See *id*. at 216. That is not the case here.

Furthermore, in the context of this case, it is unnecessary to delve further into *Mullaney* and the several cases from other jurisdictions cited by defendant. Rather, we agree with plaintiff's observation that, given the applicable law in Michigan, defendant's argument reflects "a desire to change the standard jury instruction . . . to a new version with different burdens of proof." It would not be proper for this Court to make the advocated-for changes. Defendant also conflates this desire with an evaluation of defense counsel's effectiveness. In the context of the issue presented, we must determine whether defense counsel's performance fell below an objective standard of reasonableness, and if so, whether defendant was prejudiced, which is the proper standard for reviewing defendant's ineffective-assistance claim. See *Nix*, 301 Mich App at 207.

## B.  COUNSEL'S PERFORMANCE

Defense "counsel's failure to request a jury instruction may constitute an unreasonably deficient level of performance." *People v Yeager*, 511 Mich 478, 490; 999 NW2d 490 (2023). Due process requires that the trial court "properly instruct the jury so that it may correctly and intelligently decide the case." *People v Clark*, 453 Mich 572, 583; 556 NW2d 820 (1996). To that end, the jury instructions "must include all the elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Armstrong*, 305 Mich App 230, 240; 851 NW2d 856 (2014) (citation omitted). Jury instructions are reviewed in their entirety to determine whether any error requiring reversal occurred. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011).

For the charged crime of first-degree premeditated murder, the trial court also instructed the jury on the lesser offenses of second-degree murder and voluntary manslaughter, as requested by defense counsel, and defendant was convicted of second-degree murder. The elements of second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). "Manslaughter is murder without malice." *People v Mendoza*, 468 Mich 527, 534; 664 NW2d 685 (2003). "Voluntary manslaughter requires a showing that (1) defendant killed in the heat of passion, (2) this passion was caused by an adequate provocation, and (3) there was no lapse of time during which a reasonable person could have controlled his passions." *People v Roper*, 286 Mich App 77, 87; 777 NW2d 483 (2009). Provocation is the circumstance that negates the presence of malice. See *Mendoza*, 468 Mich at 535-536. Significantly, provocation—or the absence of provocation—is not an element of the crime of second-degree murder or manslaughter that the prosecutor must prove beyond a reasonable doubt. See *People v Darden*, 230 Mich App 597, 604; 585 NW2d 27 (1998), and *People v Hopson*, 178 Mich App 406, 410; 444 NW2d 167 (1989).

Given the foregoing, defendant's argument that to prove the element of malice for second-degree murder, the prosecution has the burden of disproving heat of passion and provocation beyond a reasonable doubt, is misplaced. Furthermore, the trial court's instructions clearly set forth the applicable elements and mirrored the Michigan Model Criminal Jury Instructions for second-degree murder, M Crim JI 16.5, and voluntary manslaughter, M Crim JI 16.9. The court's instructions correctly informed the jury of all the required elements of second-degree murder and

voluntary manslaughter, and informed the jury of the differences between the two offenses and the prosecutor's burden of proof. Because the instructions fairly presented the issues to be tried, defense counsel's failure to request an inapplicable instruction for a nonexistent element of second-degree murder was not objectively unreasonable. Failure to advance a futile request does not constitute ineffective assistance of counsel. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Therefore, defendant cannot establish an ineffective-assistance claim. *Nix*, 301 Mich App at 207.

### III. DEFENDANT'S SENTENCE

Defendant argues that he is entitled to resentencing because the trial court improperly relied on racist comments and acquitted conduct when imposing sentence, thereby violating his due-process rights. We review constitutional issues de novo. *People v Harris*, 499 Mich 332, 342; 885 NW2d 832 (2016).

### A. RACIST COMMENTS

Defendant, who is Black, first argues that the trial court violated his right to due process by relying on racist epithets made by Kallabat's relatives during their victim-impact statements as a basis for imposing his 45-year minimum sentence.[1] We disagree.

Defendant correctly observes that "a sentence may not be based upon an arbitrary classification, such as race or religion." *People v Gjidoda*, 140 Mich App 294, 300; 364 NW2d 698 (1985). However, the record does not support defendant's argument that two of Kallabat's relatives were referring to defendant's race when they described him as a "monster" and a "deranged animal taking advantage of a weaker prey" in their victim-impact statements. The niece's description of defendant as a "monster" was made in the context of commenting on defendant's criminal history and the violence involved in committing the instant offense, and defendant's actions afterward of leaving the motel and making a phone call "like it's just another day to him." Similarly, the brother's description of defendant as a "deranged animal taking advantage of a weaker prey" was made in the context of commenting on Kallabat's vulnerability considering defendant's training as a boxer and the significant age difference between defendant and Kallabat, and the brother's reference to defendant as a "monster" was made in the context of describing the inhumanity of defendant's acts. There is nothing in the remarks by either person that can reasonably be construed as suggesting that defendant's race was a factor in their remarks. It is neither surprising nor unexpected that victim-impact statements, especially in the case of a family member's violent death, may include forceful or impactful words that might be perceived as inappropriate or offensive by defendants. "[T]he sentencing standards for ensuring that the goals of sentencing are met, along with the court's knowledge that victim impact statements are the subjective opinions of victims, are sufficient protections to ensure that a defendant is not sentenced in response to emotional pleas." *People v Lampe*, 327 Mich App 104, 124; 933 NW2d 314 (2019) (quotation marks and citation omitted).

---

[1] It is undisputed that defendant's 45-year minimum sentence (540 months) is within the applicable sentencing guidelines range of 270 to 675 months.

Furthermore, regardless of how the terms "monster" and "deranged animal" might be perceived, there is no indication that the trial court understood them as references to race or otherwise relied on race as a factor in fashioning defendant's sentence. First, defendant's assertion that the trial court "expressly relied" on the objectionable comments is not supported by the record. The trial court made no comments whatsoever about race, and never mentioned the allegedly objectionable terms (animal and monster) used by the family members. The mere fact that the trial court stated that it would consider the victim-impact statements did not equate to the trial court adopting or endorsing everything mentioned in the statements. Indeed, in denying defendant's motion for correction of his sentence, the court explained its awareness that the victim-impact statements merely reflected the subjective opinions of the victims. Moreover, when imposing sentence, the trial court provided several objective reasons for why it imposed a 45-year minimum sentence, and none involved any suggestion that race was a factor. What the court appeared to find most significant from the victim-impact statements, according to its comments on the record, was that Kallabat was of great importance to his extended family, all of whom were significantly impacted by defendant's actions. Accordingly, the record does not support defendant's argument that race was a factor in determining his sentence.

## B. ACQUITTED CONDUCT

Defendant also argues that he is entitled to be resentenced because the trial court sentenced him on the basis of acquitted conduct, i.e., first-degree murder and unarmed robbery, contrary to *People v Beck*, 504 Mich 605, 609; 939 NW2d 213 (2019). We again disagree.

Defendant is correct that "a sentencing court may not rely even in part on acquitted conduct when imposing a sentence for the defendant's conviction." *People v Stokes*, 333 Mich App 304, 310; 963 NW2d 643 (2020). In *Beck*, 504 Mich at 629, our Supreme Court held that "due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." "Once acquitted of a given crime, it violates due process to sentence the defendant as if he committed that very same crime." *Id*. at 609. As this Court has explained, "[i]n *Beck*, our Supreme Court remanded for resentencing because the sentencing court unquestionably *'relied'* on acquitted conduct for its sentencing decision." *Stokes*, 333 Mich App at 311 (emphasis in original.) Thus, "[i]n the absence of evidence presented by a defendant demonstrating that a sentencing court actually relied on acquitted conduct when sentencing the defendant, the defendant is not entitled to resentencing." *Id*. at 312.

In this case, the record does not indicate that the trial court relied on acquitted conduct when sentencing defendant. The trial court gave no commentary suggesting that a preponderance of the evidence showed that defendant was guilty of the acquitted offenses of first-degree murder or robbery, as was the case in *Beck*. Indeed, the court did not reference those charges at all. Rather, after defendant continued to assert his innocence during his allocution, the court observed that the "jury has already spoken" and convicted defendant of second-degree murder. Also, immediately before imposing sentence, the court stated: "I am going to be sentencing you today for your conviction for homicide, murder in the second degree[.]" Thus, the trial court was properly focused only on the second-degree murder conviction. None of the trial court's reasons for its within-guidelines sentence suggested that the court was considering acquitted conduct. The court observed that defendant testified, that the jury apparently did not believe his version of the events, and that defendant's version of the events was contradicted by the medical examiner's testimony,

which showed that there were multiple skull fractures. The court explained that it was "placing particular importance on the nature of this offense and [his] actions post the offense, after [he] left" as captured on the surveillance video from the bus, and that the sentence was fashioned for deterrence, reformation, and protection of the society. Also, in response to defendant's assertion that he "haven't been doing nothing at all," the court indicated that it was considering defendant's prior criminal record by noting defendant's prior convictions of retail fraud in 2016, assaulting, resisting, or obstructing a police officer also in 2016, and larceny in 2017. The record simply does not support defendant's argument that the trial court relied on any acquitted conduct when fashioning his sentence. Therefore, defendant is not entitled to resentencing.

## IV. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises an additional ineffective-assistance issue in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. Because defendant failed to raise this claim in a motion for a new trial or request for an evidentiary hearing in the trial court, our review of this issue is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

Decisions about whether to call witnesses are matters of trial strategy, *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999), and counsel has wide discretion in matters of trial strategy. *Heft*, 299 Mich App at 83. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *People v Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999). Defendant asserts that an expert "may have offered a theory other than the prosecution's theory of the cause of death," but he has not made an offer of proof regarding the substance of any testimony a defense expert could have offered. Defendant's mere speculation that an expert might be able to provide unspecified favorable testimony is insufficient to show that defense counsel's failure to call an expert was objectively unreasonable, or to show that there is a reasonable probability that the outcome of trial would have been different if an expert had been called. *Rockey*, 237 Mich App at 76; *Heft*, 299 Mich App at 83. Accordingly, defendant has not demonstrated that defense counsel was ineffective for failing to call a defense expert.

Affirmed.

/s/ Christopher M. Murray
/s/ Michael J. Riordan
/s/ David H. Sawyer